UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

TIFFANY F.,[1]

                Plaintiff,

-vs-

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

DECISION AND ORDER

24-CV-06294-MAV

---

## INTRODUCTION

In May 2024, Tiffany F. ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g) and § 1383(c), seeking judicial review of the Commissioner of the United States Social Security Administration's ("Commissioner") denial of her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").[2] ECF No. 1. Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF No. 8 (Plaintiff); ECF No. 11 (Commissioner). For the reasons set forth below, the Commissioner's motion for judgment on the pleadings [ECF No. 11] is granted. The Plaintiff's motion [ECF No. 8] is denied.

## PROCEDURAL HISTORY

The Court assumes the reader's familiarity with the facts and procedural

---

[1] The Court's Standing Order issued on November 18, 2020, directs that, "in opinions filed pursuant to . . . 42 U.S.C. § 405(g), in the United States District Court for the Western District of New York, any non-government party will be identified and referenced solely by first name and last initial."

[2] The regulations governing the evaluation of a claimant's eligibility for DIB under Title II of the Social Security Act are found in Part 404 of Title 20 of the United States Code of Federal Regulations. The regulations governing the evaluation of a claimant's eligibility for SSI payments are found in Part 416. Because the relevant regulations in both Parts are practically identical, citations in this decision to regulations in Part 404 should be read to also reference the regulations applicable to SSI benefits in Part 416 unless otherwise indicated.

1

history in this case, and therefore addresses only those facts and issues which bear directly on the resolution of the motions presently before the Court.

## I. Plaintiff's Applications

Plaintiff filed her application for DIB and SSI in December 2018, alleging a disability onset date of May 28, 2018. Administrative Record ("AR"), 334–345,[3] ECF No. 5. She claimed her ability to work was limited by her depression, anxiety disorder, panic disorder, "unknown cause of numbness," and the absence of a joint between L5 and S1 vertebrae in her back. AR at 381. That same month, Plaintiff was notified that she did not qualify for DIB benefits because she had not worked long enough under Social Security. AR at 114. In April 2019, the Commissioner found that Plaintiff was "not disabled," and her claim for SSI payments was denied. AR at 118. Plaintiff requested a reconsideration of the initial SSI determination, and in December 2020 was again found "not disabled." AR at 128.

After the Commissioner denied her applications at the initial level and on reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR at 146. Plaintiff's request was granted, and she appeared with her attorney for a hearing via telephone on July 29, 2021. AR at 194–231. Plaintiff's attorney summarized Plaintiff's claim as follows:

> This disability claim is based primarily on limitations as the result of fibromyalgia and degenerative disc disease of the lumbar spine, however, the claimant has also been diagnosed with depression and anxiety and has significant limitations [from] those conditions as well.

---

[3] The page references from the transcripts are to the bates numbers inserted by the Commissioner, not the pagination assigned by the Court's CM/ECF electronic filing system. Plaintiff also apparently filed a second application for disability benefits on February 8, 2021, *see* AR at 346, but the ALJ's decision at issue addresses the applications from 2018. AR at 11.

2

AR at 198–99.

In an October 6, 2021 decision, the ALJ reinstated Plaintiff's DIB claim after noting that the earnings record showed she had acquired sufficient quarters of coverage to remain insured through December 31, 2020. AR at 92. However, the ALJ determined that Plaintiff had the residual functional capacity[4] ("RFC") to perform a full range of sedentary work as defined in 20 C.F.R. § 404.1567(a), and that there were jobs that existed in significant numbers in the national economy that she could perform, such as an order clerk, a charge account clerk, and a document preparer. AR at 103.

Plaintiff appealed the ALJ's decision to the Commissioner's Appeals Council. AR at 110. After review, the Appeals Council remanded the case to the ALJ with instructions to – among other things – give further consideration to Plaintiff's RFC, to provide a rationale with specific references to the record in support of assessed limitations, and to evaluate the medical source opinions pursuant to the relevant regulations. AR at 111.

### III. Plaintiff's Second Hearing, and the ALJ's Second Decision

Plaintiff appeared with her attorney for a second hearing before the ALJ on April 20, 2023. AR at 34–56. In his opening statement, Plaintiff's attorney explained the substance of his successful appeal, and argued that the evidence showed that Plaintiff lacked the ability to perform even sedentary work. AR at 40. He pointed specifically to the opinions of the consultative medical examiner, Plaintiff's primary

---

[4] "Residual functional capacity" ("RFC") means the most that the claimant can still do in a work setting despite the limitations caused by the claimant's impairments. 20 C.F.R. § 404.1545.

3

care physician, and an examining physician's assistant. *Id*. In her testimony, Plaintiff indicated that she had not worked since 2018, and had attempted to attend college online but had failed out. AR at 43–45.

On June 30, 2023, the ALJ issued a decision which again found that Plaintiff was not disabled, and therefore did not qualify for DIB or SSI. AR at 26. At the outset, the ALJ found that Plaintiff met the insured status requirements for DIB[5] through December 31, 2020, and had not engaged in substantial gainful activity since her alleged onset date of May 1, 2018. AR at 18.

Then, at step two of the Commissioner's "five-step, sequential evaluation process,"[6] the ALJ determined that Plaintiff had two severe impairments: a history of paralysis and obesity. AR at 14–19. The ALJ acknowledged that Plaintiff also had the medically determinable impairments of fibromyalgia, vertigo, and degenerative disc disease, but found that these impairments were "non-severe" because they

---

[5] Claimants must meet the insured status requirements of the Social Security Act to be eligible for DIB. *See* 42 U.S.C. § 423(c); 20 C.F.R. § 404.130.

[6] In addition to the insured status requirements for DIB benefits, the Social Security Administration has outlined a "five-step, sequential evaluation process" that an ALJ must follow to determine whether a claimant has a "disability" under the law:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014); citing, *inter alia*, 20 C.F.R. § 404.1520(a)(4)(i)–(v), § 416.920(a)(4)(i)–(v)). The claimant bears the burden of proof for the first four steps of the process. 42 U.S.C. § 423(d)(5)(A); *Melville v. Apfel*, 198 F.3d 45, 51 (2d Cir. 1999). At step five, the burden shifts to the Commissioner to demonstrate that there is other work in the national economy that the claimant can perform. *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009).

4

caused no more than minimal limitations in her ability to perform basic work activities. AR at 14. Additionally, the ALJ conducted the special technique outlined in 20 C.F.R. § 404.1520a for the assessment of mental impairments, and found that Plaintiff's depression and anxiety were also non-severe. AR at 17–18.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). AR at 14–17. In so doing, the ALJ specifically evaluated Plaintiff's obesity pursuant to the detailed guidelines set forth in Social Security Ruling 19-2p. AR at 19. Then, before proceeding to step four, the ALJ determined that Plaintiff had the RFC to perform the full range of sedentary work as defined in 20 C.F.R. § 416.967(a). AR at 19–24.

At step four, the ALJ found that Plaintiff was unable to perform her past relevant work as merchandise marker, demonstrator, and cashier. AR at 24–25. However, at step five, the ALJ considered Plaintiff's age, education, work experience, and RFC, as well as the testimony of the VE from the second hearing, and found that Plaintiff could perform the requirements of other representative occupations that existed in significant numbers in the national economy, such as a scale operator, table worker, and final assembler. AR at 25. Therefore, the ALJ found that Plaintiff was not disabled, and not entitled to DIB or SSI payments. AR at 26.

On March 19, 2024, the Appeals Council denied Plaintiff's request to review the ALJ's June 2023 decision. AR at 1–6. The ALJ's June 2023 decision thus became the "final decision" of the Commissioner. *See Perez v. Chater*, 77 F.3d 41, 44 (2d Cir.

1996) (citing 20 C.F.R. § 404.981) ("[I]f the Appeals Council denies review, the ALJ's decision becomes the [Commissioner]'s final decision.").

## LEGAL STANDARD

Under 42 U.S.C. § 423(d), a claimant is disabled and entitled to DIB if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." *See also* 42 U.S.C. § 1382c(a)(3)(A) (adopting the same definition of "disabled" for SSI eligibility).

Where an individual's application for DIB or SSI has been denied, 42 U.S.C. § 405(g) defines the process and scope of judicial review of the Commissioner's final decision. *See also* 42 U.S.C. § 1383(c)(3) (authorizing judicial review of SSI determinations as provided in § 405(g)). The fourth sentence of § 405(g) authorizes the reviewing court to enter "a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." The sixth sentence authorizes the reviewing court to "order additional evidence to be taken before the Commissioner . . . upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." *Tirado v. Bowen*, 842 F.2d 595, 597 (2d Cir. 1988) (discussing § 405(g)).

"The entire thrust of judicial review under the disability benefits law is to ensure a just and rational result between the government and a claimant, without substituting a court's judgment for that of the [Commissioner], and to reverse an

6

administrative determination only when it does not rest on adequate findings sustained by evidence having rational probative force." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (internal citation and quotation marks omitted). Therefore, it is not the reviewing court's function to determine *de novo* whether the claimant is disabled. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012). Rather, the reviewing court must first determine "whether the Commissioner applied the correct legal standard[s]." *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999). Provided the correct legal standards are applied, the district court's review is deferential: a finding by the Commissioner is "conclusive" if it is supported by "substantial evidence." 42 U.S.C. § 405(g).

"Whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (noting that the phrase "substantial evidence" is a term of art used in reviewing administrative agency decisions to signify evidence that amounts to "more than a mere scintilla"). Thus, once an ALJ finds facts, a reviewing court can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Brault*, 683 F.3d at 448. Yet, although "the evidentiary threshold for the substantial evidence standard is not high, . . . [it] is also not merely hortatory: [i]t requires relevant evidence which would lead a reasonable mind to concur in the ALJ's factual determinations." *Colgan v. Kijakazi*, 22 F.4th 353, 359 (2d Cir. 2022) (internal quotation marks omitted).

## DISCUSSION

In her motion for judgment on the pleadings, Plaintiff presents two issues for the Court's review, both of which relate to the ALJ's analysis at step two. First,

Plaintiff argues that the ALJ failed to properly evaluate her fibromyalgia under Social Security Ruling 12-2p. ECF No. 8-1 at 12–19. Second, Plaintiff argues that the ALJ erred in his evaluation of the medical opinion of Licensed Master Social Worker Melissa Whyte ("LMSW Whyte") under 20 C.F.R. § 404.1520a. The Commissioner maintains that the ALJ's decision is free from legal error and supported by substantial evidence. ECF No. 11-1.

I. The ALJ's Step Two Fibromyalgia Analysis

Plaintiff maintains that the ALJ failed to properly evaluate her fibromyalgia under Social Security Ruling 12-2p ("SSR 12-2p"). Specifically, she argues that the ALJ "completely ignored" SSR 12-2p, as shown by his improper reliance on a lack of tender point findings on examination, and failure to consider newer 2010 criteria recognized in SSR 12-2p. ECF No. 8-1 at 14. She also argues that the ALJ improperly based his finding of non-severity on the absence of "objective evidence." These arguments are without merit.

A. Legal Principles

SSR 12-2p sets forth the factors the ALJ must consider to determine whether a claimant has a medically determinable impairment ("MDI") of fibromyalgia. *See Evaluation of Fibromyalgia*, Social Security Ruling 12-2p, 2012 WL 3104869 at *2–3 (S.S.A. July 25, 2012).

First, a physician must diagnose fibromyalgia. *Id.* at *2. Second, that diagnosis cannot be inconsistent with the other evidence in the case record. *Id.* Third, the physician must provide evidence that the claimant meets either the 1990 criteria or the 2010 criteria set forth by American College of Rheumatology ("ACR") for the

classification of fibromyalgia. *Id.* The 1990 ACR criteria includes: a history of widespread pain, at least eleven positive tender points on physical examination, and evidence that other disorders that could cause the symptoms or signs were excluded. *See Janine H. v. Comm'r of Soc. Sec.*, No. 19-CV-1432-FPG, 2021 WL 1185872, at *3 (W.D.N.Y. Mar. 30, 2021) (quoting *Cooper v. Comm'r of Soc. Sec.*, No. 17-CV-1058-MJR, 2019 WL 1109573, at *4 (W.D.N.Y. Mar. 11, 2019)). The 2010 criteria includes: a history of widespread pain, repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions, and evidence that other disorders that could cause these repeated manifestations were excluded. *Id.*

If the ALJ has established that the claimant has an MDI of fibromyalgia, he must consider that impairment throughout the remainder of the five-step sequential evaluation process. SSR 12-2p, 2012 WL 3104869 at *2. As relevant here, at step two of the sequential evaluation process, the ALJ must consider whether the claimant's MDI of fibromyalgia is severe. *See* 20 C.F.R. § 404.1520(c) (identifying an impairment as "severe" where it "significantly limits" the claimant's ability to perform basic work activities).

Step two's severity requirement is *de minimis* and meant to screen out only the weakest of claims. *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995). However, the *de minimis* standard must be read together with this Court's substantial evidence standard of review under 42 U.S.C. § 405(g). *Dione B. v. Comm'r of Soc. Sec.*, No. 1:20-CV-1745, 2022 WL 1458594, at *4 (W.D.N.Y. May 9, 2022). That is, the step two finding "should be affirmed if there is substantial evidence in the record for the conclusion that a [claimant]'s impairment is a *de minimis* one." *Id.*

With respect to fibromyalgia in particular, SSR 12-2p provides that if the ALJ finds at step two that the claimant's MDI of fibromyalgia could reasonably be expected to produce the pain or other symptoms the claimant alleges, the ALJ must consider those symptom(s) in deciding whether her impairment(s) is severe. SSR 12-2p, 2012 WL 3104869 at *5. Further, SSR 12-2p states that "[i]f objective medical evidence does not substantiate the [claimant]'s statements about the intensity, persistence, and functionally limiting effects of symptoms, [the ALJ must] consider all of the evidence in the case record, including the [claimant]'s daily activities, medications or other treatments the [claimant] uses, or has used, to alleviate symptoms; the nature and frequency of the [claimant]'s attempts to obtain medical treatment for symptoms; and statements by other people about the [claimant]'s symptoms." *Id.* at *5.

### B. The ALJ's Analysis of Plaintiff's Fibromyalgia at Step Two

As the Commissioner points out in her brief, the ALJ in the present case found that Plaintiff had the medically determinable impairment of fibromyalgia. ECF No. 11-1 at 8; AR at 14. Consequently, the Court is not persuaded by Plaintiff's argument that the ALJ relied largely on the absence of evidence of tender points, and thereby failed to follow SSR 12-2p's requirement to consider the ACR's 1990 *and* 2010 criteria.

As SSR 12-2p makes clear, the ACR's 1990 and 2010 criteria are used to determine whether or not a claimant has an MDI of fibromyalgia, and that "tender point" examinations are included only in the 1990 criteria. SSR 12-2p, 2012 WL 3104869 at *2. However, where the ALJ has determined that a claimant has the MDI of fibromyalgia, SSR 12-2p does not preclude the consideration of "tender points"

10

when evaluating the evidence of record through the remainder of the five step evaluation process. Indeed, several courts in this Circuit have remanded matters for further consideration where the ALJ did not acknowledge treatment records documenting tender points. *See Robert T. S. v. Comm'r of Soc. Sec.*, No. 5:21-CV-38 (CFH), 2022 WL 1746968, at *8–9 (N.D.N.Y. May 31, 2022) (collecting cases). Thus, the ALJ did not err by considering the absence of relevant evidence in evaluating the limitations imposed by Plaintiff's MDI. *Serena B. v. Comm'r of Soc. Sec.*, No. 6:23-CV-06423 EAW, 2024 WL 3822808, at *6 (W.D.N.Y. Aug. 15, 2024).

Indeed, the Court finds that Plaintiff's general argument that the ALJ improperly relied on the lack of objective evidence in the record is inapposite. Instead, the relevant issue is whether the ALJ's step two finding that Plaintiff's MDI of fibromyalgia was non-severe was supported by substantial evidence. The Court finds that it is.

The legal principles regarding the evaluation of objective evidence supporting fibromyalgia claims are well-settled in this Circuit:

> To be sure, "[t]he Second Circuit has recognized that 'fibromyalgia is a disabling impairment and that 'there are no objective tests which can conclusively confirm the disease.'" *Nieves v. Comm'r of Soc. Sec.*, No. 23-CV-5 (JGLC) (BCM), 2024 WL 992197, at *14 (S.D.N.Y. Feb. 20, 2024) (quoting *Green-Younger v. Barnhart*, 335 F.3d 99, 108 (2d Cir. 2003) (internal quotations omitted)), *report and recommendation adopted*, 2024 WL 990125 (S.D.N.Y. Mar. 7, 2024). Accordingly, while a fibromyalgia diagnosis will not alone direct a finding of disability, "the ALJ is not entitled to rely solely on objective evidence – or lack thereof – related to fibromyalgia, but must consider all relevant evidence, including the longitudinal treatment record." *Lara M. v. Comm'r of Soc. Sec.*, No. 522CV01407(AMN/ML), 2023 WL 10365082, at *10 (N.D.N.Y. Dec. 20, 2023) (quoting *Anysha M. v. Comm'r of Soc. Sec.*, No. 3:19-CV-0271 (CFH), 2020 WL 1955326, at *3 (N.D.N.Y. Apr. 23, 2020)), *report*

11

> *and recommendation adopted*, 2024 WL 862196 (N.D.N.Y. Feb. 29, 2024).
>
> At the same time, this does not preclude the ALJ from considering a lack of objective evidence in connection with his assessment of a claimant's fibromyalgia. *See Amanda T. v. Comm'r of Soc. Sec.*, No. 1:21-CV-00817 (JGW), 2024 WL 1257408, at *5 (W.D.N.Y. Mar. 25, 2024) . . . .

*Serena B.*, 2024 WL 3822808, at *6. Nor is an ALJ required to accept a claimant's statements about the severity and disabling effects of her fibromyalgia pain, where there is conflicting evidence, such as "only mild or slight symptoms" and activities inconsistent with disabling pain, casting doubt on such statements. *Rivers v. Astrue*, No. 07–3104–cv, 280 F. App'x 20, 22–23 (2d Cir. May 28, 2008).

In his step two analysis of Plaintiff's fibromyalgia, the ALJ wrote:

> The claimant testified that clothing hurts h[er] skin, which feels like "pins and needles", and that [s]he experiences flare-ups that consist of swelling of h[er] feet and hands . . . . Nonetheless, treatment records contain no objective evidence showing that the claimant exhibits the symptoms associated with fibromyalgia. Specifically, the record does not confirm that [s]he has the requisite number of tender point findings (or any tender points) . . . . Furthermore, the consultative examination was a one-time examination and there is no evidence of any long-term treatment for these impairments by the claimant's physicians other than medications like gabapentin, Zofran, and meclizine, and [s]he only uses the Zofran and meclizine intermittently . . . . Recent records show sporadic complaints relating to these impairments . . . .

AR at 14 (internal citations to the record omitted).

That is, the ALJ first looked for objective evidence to substantiate Plaintiff's complaints and, finding "no objective evidence showing . . . symptoms associated with fibromyalgia," proceeded to consider the medications Plaintiff used and Plaintiff's "sporadic" attempts to obtain treatment for her symptoms. AR at 14. This analysis is consistent with the dictates of SSR 12-2p. SSR 12-2p, 2012 WL 3104869 at *5

12

(directing that where objective medical evidence does not substantiate the claimant's statements about her symptoms, the ALJ must consider all of the evidence in the case record).

The ALJ further elaborated upon his assessment of the evidence in his RFC explanation. The ALJ recognized Plaintiff's emergency room treatment for complaints of right upper and lower extremity paralysis in May of 2018 (AR at 20, citing AR at 550, 553, 556), but also pointed out that Plaintiff's condition improved soon thereafter (AR at 20, citing AR at 553, 555). In fact, by Plaintiff's visit with her primary care physician, Michael Herbowy, M.D., in November 2018, she did not have complaints regarding her physical condition and did not follow up with Dr. Herbowy again until March 2021. AR at 21 (citing AR at 529, 684–86). At that time, Dr. Herbowy noted normal strength, muscle tone, reflexes, coordination, and ranges of motion. AR at 21 (citing 686). Neurological evaluations in September 2019, March 2021, and September 2021 "revealed normal functioning for the most part." AR at 21 (citing AR at 842, 847, 852). At appointments in August and November 2021, Plaintiff reported that gabapentin was helping her fibromyalgia. AR at 21 (citing AR at 810).

In short, the ALJ did not improperly rely solely on a lack of objective evidence in assessing Plaintiff's fibromyalgia. Rather, the ALJ properly considered "all relevant evidence, including the longitudinal treatment record." *Serena B.*, 2024 WL 3822808 at *6. The ALJ's ample references, either to the lack of evidence supporting Plaintiff's claim or to actual evidence inconsistent with her claim, were not erroneous simply because they related to fibromyalgia. *See Amanda T.*, 2024 WL 1257408 at *5.

13

In fact, the Court finds that such references serve as substantial evidence supporting the ALJ's step two finding that Plaintiff's fibromyalgia was non-severe.

**II. The ALJ's Evaluation of LMSW Whyte's Opinion**

On August 11, 2021, Plaintiff's mental health counselor, LMSW Whyte, completed an "evaluation of mental work limitations" form. AR at 718–723. The form listed four primary abilities – ability to understand and remember, social interactions, sustained concentration, and stress – and asked LMSW Whyte to assess the level of limitation that Plaintiff's impairments would cause. *Id.* The form provided LMSW Whyte with four options: the impairment would cause no limitation, or it would leave her unable to function (i) 1–10% of the time, (ii) 11–25% of the time, or (iii) 25% or more of the time. *Id.* In each of the four areas assessed, LMSW Whyte indicated that Plaintiff would be unable to function 11–25% of the time. *Id.* In the "Comment" box beneath her assessment of each ability, LMSW Whyte explained simply, "Client reports difficulty" or "Client reports difficulty and increase in symptoms." *Id.*

In his decision, the ALJ found LMSW Whyte's opinion unpersuasive. AR at 17. He reasoned that LMSW Whyte's opinion was not supported by any objective findings, but only self-reports by Plaintiff. *Id.* He also explained that the opinion was not consistent with treatment notes that showed relatively normal mental status examinations, control of symptoms with Wellbutrin and Zoloft, only sporadic and minimal complaints, no significant mental health treatment, and Plaintiff's own reports to the consultative examiners that she retained the ability to perform a wide range of daily activities. *Id.*

Plaintiff maintains that the ALJ erred in evaluating LMSW Whyte's medical opinion. In particular, Plaintiff argues that the ALJ erred in evaluating the "supportability" of LMSW Whyte's opinion because he failed to acknowledge the objective mental status exams throughout her treatment notes. ECF No. 8-1 at 21–22. Additionally, Plaintiff argues that the ALJ erred in evaluating the "consistency" of LMSW Whyte's opinion with other evidence by failing to consider abnormal examinations with other counselors, and by relying on Plaintiff's daily activities. *Id.* at 22–24.

### A. Legal Principles

Regulations effective for all claims filed after March 27, 2017 provide that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a). *See also, e.g., Spottswood v. Kijakazi*, No. 23-54-CV, 2024 WL 89635, at *3 (2d Cir. Jan. 9, 2024) (noting that under 20 C.F.R. § 404.1520c, the ALJ "owes no special deference to any particular medical opinion in the record"). Rather, the regulations direct that the ALJ will evaluate the "persuasiveness" of all opinions and prior administrative medical findings in the record by assessing multiple factors, including supportability, consistency, the length and nature of the relationship of the source with the claimant, the source's specialization, and "other factors" that tend to support or contradict a medical opinion. 20 C.F.R. § 404.1520c(c).

Of these factors, supportability and consistency are the most important. *See Loucks v. Kijakazi*, No. 21-1749, 2022 WL 2189293, at *1 (2d Cir. June 17, 2022)

(discussing 20 C.F.R. § 404.1520c(b)(2)). Therefore, while the ALJ need not explain in his decision how he considered all of the factors, he must explain how he "considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings . . . ." 20 C.F.R. § 404.1520c(b)(2). Supportability refers to how "the objective medical evidence and supporting explanations presented by a medical source . . . support [the medical source's] opinion(s) or prior administrative medical finding(s)." 20 C.F.R. § 404.1520c(c)(1). Consistency refers to how similar "a medical opinion(s) or prior administrative medical finding(s) is with the evidence" in the record. 20 C.F.R. § 404.1520c(c)(2).

In conducting this evaluation, "[a]n ALJ is prohibited from 'playing doctor' in the sense that an ALJ may not substitute h[er] own judgment for competent medical opinion . . . ." *Elizabeth P. v. Comm'r of Soc. Sec.*, No. 1:23-CV-00652 EAW, 2024 WL 2812434, at *7 (W.D.N.Y. June 3, 2024) (quoting *Quinto v. Berryhill*, No. 3:17-cv-00024 (JCH), 2017 WL 6017931, at *12 (D. Conn. Dec. 1, 2017)). Nevertheless, the regulations make clear that the ALJ – and not the claimant's medical sources – is responsible for making the determination or decision about whether the claimant is disabled. 20 C.F.R. § 404.1520b(c)(3). Thus, it is up to the ALJ to weigh the conflicting evidence in the record. *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998).

### B. The ALJ's Analysis of LMSW Whyte's Opinion

*Supportability*

The Court finds Plaintiff's argument with respect to the ALJ's consideration of the supportability factor to be unpersuasive. Under the relevant regulations, the supportability factor requires the ALJ to evaluate the extent to which "the objective

16

medical evidence and supporting explanations presented by a medical source . . . support his or her medical opinion(s)." 20 C.F.R. § 404.1520c(c)(1). Here, LMSW Whyte's opinion does not present *any* of her own objective medical evidence, and provides nothing in the way of supporting explanation. *See, e.g., Sandra M. v. Comm'r of Soc. Sec.*, No. 3:22-CV-00485-TWD, 2023 WL 4972707, at *10 (N.D.N.Y. Aug. 3, 2023) ("It is well within the ALJ's discretion to reject a medical opinion when there is a lack of evidence supporting the limitations . . . .").

As noted above, the only explanation that LMSW Whyte offered in support of the significant limitations she assessed were that Plaintiff had "reported difficulty" and, in some cases, "an increase in symptoms"; there were no citations to specific evidence supporting the limitation. AR at 718–23. *See, e.g., Briana R. v. Comm'r of Soc. Sec.*, No. 23-CV-0410-LJV, 2025 WL 2653097, at *5 (W.D.N.Y. Sept. 16, 2025) (collecting cases in support of the proposition that "an ALJ does not err in discounting those parts of a medical opinion that appear to be based on little more than subjective complaints."). Further, in response to the query on the form regarding how many hours Plaintiff should be restricted to work, LMSW Whyte wrote that she was unable to provide a specific recommendation "due to not having any in person visits or any other evaluations." AR at 722.

Perhaps most telling, though, was LMSW Whyte's response to the question as to the sources of support for the limitations in her opinion. *Id.* Although she had the option to select a box indicating that her opinion was supported by her "clinical findings and observations including mental status exams," LMSW Whyte instead selected only "mental health history," her diagnosis, and "reports from other

17

treating/examining sources and third parties." *Id.* That is, she did not indicate that her own clinical findings and observations supported her opinion.

In any event, Plaintiff's brief overstates the degree to which LMSW Whyte's treatment records support the work-preclusive limitations that she opined. To be sure, the treatment notes do include instances in which Plaintiff is depressed and distracted (*e.g.*, AR at 667), but she was also typically cooperative with appropriate affect, focused thought process, and intact memory and attention (*e.g.*, AR at 622). As the ALJ stated, the treatment records in evidence "show relatively normal mental status examination findings, except for some slow processing speed, feeling 'blah,' occasional limited insight and judgment, sad mood, and a one-time suicidal gesture [in February 2020]." AR at 17 (citing, *inter alia*, LMSW Whyte's treatment records at AR at 596–675).

*Consistency*

The Court finds that Plaintiff's argument with respect to the ALJ's consistency analysis is also unpersuasive. For one, the ALJ's consistency analysis noted that the treatment notes from LMSW Whyte and other providers showed Plaintiff's anxiety and depression were controlled with medication. AR at 17 (citing AR at 531 (2018), 683 (2021), 821 (2021), 940 (2023)). *See, e.g., Smith v. Comm'r,* No. 16-CV-953 HBS, 2018 WL 5076918, at *2 (W.D.N.Y. Oct. 17, 2018) (affirming denial of benefits where the plaintiff's anxiety was controlled with medication). The ALJ also pointed to the reports from consultative psychological examiner Marisol Valencia-Payne, Psy.D., and consultative medical examiner Harbinder Toor, M.D., to whom Plaintiff reported in 2020 that she could dress, bathe, groom herself, shop, cook and prepare meals, do

18

general cleaning, do laundry, socialize with her friends, crochet, watch TV, listen to music, use the computer for social media, and read. AR at 17 (citing AR at 542, 572).

Plaintiff objects to the ALJ's reliance on Plaintiff's activities of daily living, but the Court notes that "the ALJ was entitled to consider Plaintiff's daily activities as part of the broader record of Plaintiff's functional limitations." *Briselida R. v. Comm'r of Soc. Sec.*, No. 522CV01290TJMML, 2023 WL 9600841, at *10 (N.D.N.Y. Nov. 20, 2023), *report and recommendation adopted sub nom. Briselida R. v. O'Malley*, No. 522CV1290FJSML, 2024 WL 532568 (N.D.N.Y. Feb. 8, 2024) (citing, *inter alia*, *Medina v. Comm'r of Soc. Sec.*, 831 F. App'x 35, 36 (2d Cir. 2020)). Indeed, SSR 12-2p requires as much, providing that where "the objective medical evidence does not substantiate" the claimant's statements about the limiting effects of her symptoms, the ALJ must "consider all of the evidence in the case record, including the [claimant]'s daily activities . . . ." SSR 12-2p, 2012 WL 3104869 at *5. Here, as discussed above, Plaintiff's statements are not substantiated by objective medical evidence. Thus, Plaintiff's daily activities are permissible considerations under both SSR 12-2p and the regulations. *See, e.g.,* 20 C.F.R. § 404.1529(c)(3)(i) (identifying "daily activities" as factors relevant to the claimant's symptoms).

In sum, the ALJ adequately considered both the supportability and consistency factors as required by 20 C.F.R. § 404.1520c, and supported his considerations with substantial evidence. *See Teena H. o/b/o N.I.K. v. Comm'r of Soc. Sec.*, 521 F. Supp. 3d 287, 292 (W.D.N.Y. 2021) ("Absent a legal error, the Court must uphold the Commissioner's decision if it is supported by substantial evidence, even if the Court might have ruled differently had it considered the matter in the first instance.")

(internal citations omitted).

## CONCLUSION

For the foregoing reasons, Plaintiff Tiffany F.'s motion for judgment on the pleadings [ECF No. 8] is denied, and the Commissioner's motion for judgment on the pleadings [ECF No. 11] is granted. The Clerk of Court is directed to enter judgment on behalf of the Commissioner and close this case.

SO ORDERED.

DATED:   September 30, 2025
           Rochester, New York

                                                _____
                                                HON. MEREDITH A. VACCA
                                                United States District Judge